UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK GIZEWSKI,

                        Plaintiff,                   9:14-CV-0124
                                                         (GTS/DJS)

v.

NEW YORK STATE DEPARTMENT OF
CORRECTIONS AND COMMUNITY
SUPERVISION; MICHAEL SHEAHAN,
Superintendent at Five Points Correctional Facility,
in his official and individual capacity; JOHN DOE 1,
Plaintiff's Treating Physician at Five Points
Correctional Facility, in his official and individual
capacity; and JOHN DOE 2, Corrections Officer
at Five Points Correctional Facility,

                        Defendants.
_____

APPEARANCES:                           OF COUNSEL:

LEVINE & BLIT, PLLC                LEWIS G. SPICER, ESQ.
  Counsel for Plaintiff                 MATTHEW J. BLIT, ESQ.
350 Fifth Avenue, Suite 6902           JUSTIN S. CLARK, ESQ.
New York, New York 10118

ERIC T. SCHNEIDERMAN           CHRISTOPHER W. HALL, ESQ.
Attorney General for the State of New York    Assistant Attorney General
  Counsel for Defendants
The Capitol
Albany, New York 12224

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

      Currently before the Court, in this prisoner civil rights action filed by Mark Gizewski

("Plaintiff") against the New York State Department of Corrections and Community Supervision

("DOCCS"), and three of its employees (collectively "Defendants"), is Defendants' motion for

summary judgment (Dkt. No. 37) and Plaintiff's cross-motion to join Kristin Salotti as a defendant (Dkt. No. 42).  For the reasons set forth below, Defendants' motion is granted and Plaintiff's cross-motion is denied.

## I.    RELEVANT BACKGROUND

### A.    Plaintiff's Complaint

Plaintiff's Complaint asserts the following four claims: (1) a claim that DOCCS discriminated against Plaintiff based upon his disabilities in violation of Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; (2) a claim that DOCCS failed to reasonably accommodate Plaintiff's disabilities in violation of Title II of the ADA; (3) a claim that Defendants Sheahan, John Doe 1, and John Doe 2 violated the Eighth Amendment and 42 U.S.C. § 1983 by acting with deliberate indifference to Plaintiff's serious medical needs; and (4) a claim that DOCCS unlawfully retaliated against Plaintiff for engaging in protected activity in violation of Title II of the ADA.  (Dkt. No. 1, ¶¶ 86-109 [Pl.'s Compl.].)  Familiarity with the factual allegations supporting these claims in Plaintiff's Complaint is assumed in this Decision and Order, which is intended primarily for the review of the parties.

### B.    Statement of Undisputed Material Facts

The undisputed material facts are as follows.  Plaintiff was incarcerated at Five Points Correctional Facility ("C.F."), located in Romulus, New York, from May 25, 2012, until January 14, 2014.  (Dkt. No. 37, Attach. 1, ¶ 2 [Defs.' Rule 7.1 Statement].)[1]

---

[1]    Unless otherwise indicated, the cited factual assertions of Defendants were either expressly admitted by Plaintiff or denied without a supporting record citation by Plaintiff.

<u>Requests for Accommodation</u>

On February 7, 2013, Plaintiff made a formal request for a cassette tape player so he could listen to books on tape, which was approved the next day.  (*Id.*, ¶ 49.)  The bottom of the "request for reasonable accommodation" form advised the inmate that he could file a grievance regarding the request.  (*Id.*, ¶ 50.)  On March 4, 2013, Plaintiff requested that a stool in his cell be moved and to be provided with a new shower hose and handle.  (*Id.*, ¶ 51.)  This request was partially granted in that the stool in Plaintiff's cell was moved, and the shower hose was repaired (rather than replaced), but Plaintiff was not given a new handle.  (*Id.*, ¶ 52.)  On April 3, 2013, Plaintiff requested a Roho cushion.  (*Id.*, ¶ 53.)  The following day, Matthew Thoms, Deputy Superintendent for Administration at Five Points C.F., referred Plaintiff's request to Nurse Administrator Bannister, which was subsequently approved.  (*Id.*, ¶¶ 53-54.)  On May 15, 2013, Plaintiff wrote to Nurse Administrator Bannister to inquire about the status of the delivery of his Roho cushion, which he received on July 2, 2013.  (*Compare* Dkt. No. 37, Attach. 1, ¶ 55 [Defs.' Rule 7.1 Statement, asserting that Plaintiff mistakenly stated in his letter that he had made the request for the cushion three months prior but it was only one month before] *with* Dkt. No. 41, Attach. 1, ¶ 55 [Pl.'s Rule 7.1 Response, citing a DOCCS' Ambulatory Health Record Progress Note, dated January 23, 2013, in which Plaintiff requested a "w/c cushion please"].)  On September 11, 2013, Plaintiff requested a second Roho cushion and received it on October 16, 2013.  (*Id.*, ¶ 57.)

On August 30, 2013, Mr. Thoms received the letter from Plaintiff's attorney, dated August 23, 2013, which was attached to his grievance, FPT 27997-13, that made a number of requests for accommodation described previously.  (*Id.*, ¶ 58.)  In response, Nurse Administrator

Bannister investigated whether these requests should be granted and wrote a memo dated September 9, 2013, with her findings.  (*Id.*, ¶ 60.)  Mr. Thoms incorporated Nurse Administrator Bannister's findings into his letter response, dated September 12, 2013, to Plaintiff's attorney. (*Id.*, ¶ 65.)  On September 18, 2013, Plaintiff submitted another formal request for reasonable accommodations asking for a grabber tool, grab bars, soft bristle shower brushes, a wheelchair pusher and a cell assistant.  (*Id.*, ¶ 66.)  All of these requests were granted.  (*Compare* Dkt. No. 37, Attach. 1, ¶ 67 [Defs.' Rule 7.1 Statement, asserting above-stated fact and citing record evidence that establishes fact] *with* Dkt. No. 41, Attach. 1, ¶ 67 [Pl.'s Rule 7.1 Response, failing to cite record evidence that controverts above-stated fact].)  On November 1, 2013, Mr. Thoms sent a letter to Plaintiff's attorney to advise him that Plaintiff had received a new Roho cushion on October 16, 2013, as well as two soft bristle brushes and a grabber tool on October 18, 2013. (*Id.*, ¶¶ 70-71.)  Mr. Thoms further advised Plaintiff's attorney that Plaintiff was housed in a handicap cell with grab bars.  (*Id.*, ¶ 71.)

On November 22, 2013, Plaintiff submitted another formal request for accommodation, asking for vertical shower bars to be installed in his cell.  (*Id.*, ¶ 72.)  This request was received on November 29, 2013, by the Deputy Superintendent for Programs, Laurine Jones.  (*Id.*, ¶ 73.) Plaintiff's request was reviewed by DOCCS' medical personnel and subsequently approved on December 6, 2013.  (*Id.*, ¶ 74.)  On December 22, 2013, Plaintiff submitted his last formal request for formal accommodation at Five Points C.F., asking for a cell assistant to help make his bed and put on his socks.  (*Id.*, ¶ 75.)  Plaintiff's request was received by Mr. Thoms on December 30, 2013.  (*Id.*, ¶ 76.)  In resolving this request, Mr. Thoms decided that, because of Plaintiff's "current disciplinary [and] physical status, he is being housed in [the] infirmary in lieu

-4-

of SHU, to accommodate [his] needs." (*Id.*, ¶ 77.)  Plaintiff checked the box at the bottom of the

request for reasonable accommodation form indicating he agreed with this decision.  (*Id.*)

<u>Plaintiff's Grievances</u>

While incarcerated at Five Points C.F., Plaintiff filed two grievances that were formally

processed.  (*Compare* Dkt. No. 37, Attach. 1, ¶ 3 [Defs.' Rule 7.1 Statement, asserting that

Plaintiff filed only two grievances while incarcerated] *with* Dkt. No. 41, Attach. 1, ¶ 3 [Pl.'s Rule

7.1 Response, asserting that Plaintiff made numerous grievance but only two were processed].)

One of these grievances was assigned file number FPT-27869 and was received on August 27,

2013.  (Dkt. No. 37, Attach. 1, ¶ 4 [Defs.' Rule 7.1 Statement].)  In that grievance, Plaintiff

complained about his COMPAS risk assessment, which apparently affected his parole eligibility

but has nothing to do with the causes of action asserted in his Complaint.  (*Id.*, ¶¶ 5-6.)

The other grievance was assigned file number FPT-27997-13 and was received on

October 1, 2013.  (*Id.*, ¶ 7.)  In that grievance, Plaintiff complained generally that "reasonable

accommodations are not being provided.  Adequate medical care is not being provided." (*Id.*, ¶

8.)  In addition, Plaintiff attached a letter, dated August 23, 2013, from his attorney, who raised

the following specific complaints on Plaintiff's behalf: (1) objecting to the requirement that

Plaintiff be placed in the infirmary before he could receive pain medication; (2) requesting a

transfer to Fishkill C.F. where Plaintiff could receive better care; (3) requesting an access ramp

be built in compliance with the ADA so Plaintiff could access the yard area in order to join other

participants in the horticulture program; (4) requesting a motorized wheelchair because Plaintiff

has deformed hands and had difficulty using his current chair; (5) requesting a shower brush for

hygienic purposes; (6) requesting a four-inch Roho air cushion for Plaintiff's wheelchair; (7)

-5-

requesting a grabber tool to allow Plaintiff easier access to the food items in his locker; (8)

requesting an appointment with a pain specialist; (9) requesting a cell assistant; and (10)

requesting that grab-bars be installed on the outside of Plaintiff's shower.  (*Id.*, ¶ 9.)

IGRC's Decision and Plaintiff's Appeal

In response, the Inmate Grievance Resolution Committee ("IGRC") granted Plaintiff's

request for a Roho cushion, two shower brushes, and a grabber tool, and submitted a work order

to have bars installed on the inside and outside of Plaintiff's shower.  (*Id.*, ¶¶ 11-12.)  The IGRC

also found Plaintiff's request for a cell assistant to be an "appropriate request."  (*Id.*, ¶ 14.)  The

IGRC denied Plaintiff's request for a new wheelchair, however, because Plaintiff "navigate[d]

very well with his legs and has a pusher available at all times."  (*Id.*, ¶¶ 13, 61.)  On November 1,

2013, Plaintiff appealed the IGRC determination to Defendant Sheahan, who denied Plaintiff's

appeal, noting that he had received a Roho cushion on October 16, 2013, and a grabber tool as

well as soft bristle shower brushes on October 18, 2013.  (*Id.*, ¶ 15.)  Defendant Sheahan also

noted that Plaintiff was "housed in a handicap cell that has grab bars installed for his needs."

(*Id.*, ¶ 16.)  On November 14, 2013, Plaintiff appealed Defendant Sheahan's decision to the

Central Office Review Committee ("CORC").  (*Id.*, ¶ 17.)  Due to a clerical error, however, the

Five Points C.F.'s grievance office failed to forward Plaintiff's appeal to CORC until five

months later on April 30, 2014.  (*Id.*, ¶ 18.)

Plaintiff's Transfer to Walsh

On January 14, 2014, Plaintiff was transferred from Five Points C.F. to Walsh Regional

Medical Unit ("Walsh").  (*Id.*, ¶ 25.)  Walsh is a DOCCS' regional medical facility that adjoins,

and is part of, Mohawk C.F. in Rome, New York.  (*Id.*, ¶ 26.)  Inmates at Walsh file their

-6-

grievances with the Mohawk C.F.'s grievance office.  (*Id.*, ¶ 27.)  Joseph Cieslak, the Inmate

Grievance Program Supervisor at Mohawk C.F., was unable to locate any grievances filed by

Plaintiff related to a use of force at Five Points C.F. in January 2014, improper medical treatment

at Five Points C.F. and Walsh, or denial of pain medication by Walsh medical staff from January

2014 through February 2014.  (*Id.*, ¶ 28.)  However, on May 28, 2014, Plaintiff filed a grievance

regarding the denial of pain medication for the first 10 days that he was at Walsh but did not

name a defendant with respect to this claim.  (*Id.*, ¶¶ 29-31, 40, 47-48.)  Jeffrey Hale, the

Assistant Director of the DOCCS' Inmate Grievance Program and records custodian for CORC,

conducted a search for grievance appeals filed by Plaintiff with CORC in 2013 and 2014 when he

resided at Five Points C.F. and Walsh.  (*Id.*, ¶¶ 32-33.)  Mr. Hale found that Plaintiff had

appealed one grievance from Five Points C.F. (FPT-27997-13) and one grievance from Walsh

(MHK-12578-14).  (*Id.*, ¶ 34.)

  **C.**  **Parties' Briefing on Their Respective Motions**

    **1.**  **Defendants' Motion for Summary Judgment**

      **a.**  **Defendants' Memorandum of Law**

  Generally, in their memorandum of law, Defendants assert five arguments with regard to

Plaintiff's claims against them.  (Dkt. No. 37, Attach. 6 [Defs.' Mem. of Law].)

  First, Defendants argue that Plaintiff failed to exhaust his administrative remedies before

commencing the present action and note that Plaintiff filed only two grievances (FPT 27869-13

and FPT 27997-13) while incarcerated at Five Points C.F., the first of which (FPT 27869-13) is

not relevant to the claims in this action.  (*Id.* at 2-9.)  With respect to the second grievance,

Defendants argue that, although the grievance office failed (due to a clerical error) to forward the

appeal to CORC until five months after Plaintiff filed it, he was obligated to either file a direct appeal to CORC or file a new grievance regarding the delay.  (*Id.* at 5.)  Alternatively, Defendants argue that, in his appeal, Plaintiff raised only four of the eleven issues he previously grieved.  (*Id.* at 6-7.)[2]  Therefore, Defendants argue that the other seven issues were not administratively exhausted because they had been abandoned by Plaintiff.  (*Id.* at 7.)[3]

With respect to the other grievances that Plaintiff alleges he filed, but that were never formally processed, Defendants argue that Plaintiff did file one grievance (MHK-12578-14) while at Walsh on May 28, 2014, seeking certain reasonable accommodations.  (*Id.*)  However, Defendants argue that this claim for such reasonable accommodations is unrelated to Plaintiff's legal claim against Walsh in the present action, which alleges that Plaintiff was denied pain medication.  (*Id.*)  In any event, Defendants argue that Plaintiff failed to administratively exhaust any claims he had while at Walsh.  (*Id.* at 7-8.)  Finally, Defendants argue that Plaintiff failed to grieve the substance of his three ADA claims (the first, second, and fourth causes of action in his Complaint) and his § 1983 claims (the third cause of action in his Complaint) at either Five Points C.F. or Walsh.  (*Id.* at 8-9.)

---

[2]     According to Defendants, these four issues consist of the following: (1) Plaintiff's request for a grabber tool; (2) his request for a Roho cushion; (3) his request for shower brushes; and (4) his complaint that the shower bars that had been installed were inadequate because "they're not where I need them to be and therefore are dangerous."  (Dkt. No. 37, Attach. 6, at 6 [Defs.' Mem. of Law].)

[3]     These seven issues consist of the following: (1) Plaintiff being able to receive pain medication only when he is in the infirmary; (2) Plaintiff's request to be transferred to Fishkill C.F.; (3) the installation of an access ramp to the yard area; (4) a new wheelchair; (5) an appointment with a pain specialist; (6) a cell assistant; and (7) better medical care.  (*Id.* at 7.)

Second, Defendants argue that Plaintiff's ADA retaliation claim in his fourth cause of action is barred by the Eleventh Amendment because, although Plaintiff asserted a retaliation claim in violation of Title II of the ADA in his fourth cause of action, retaliation claims are brought pursuant to Title V and New York State has not abrogated its sovereign immunity with respect to Title V retaliation claims.  (*Id.* at 9-10.)

Third, Defendants argue that Plaintiff's § 1983 claims in his third cause of action fail to state a claim because he has failed to allege facts plausibly suggesting that Defendant Sheahan had any personal involvement in the allegations serving as the basis for Plaintiff's medical indifference and excessive force claims at Five Points C.F.  (*Id.* at 10-11.)  More specifically, Defendants argue that Plaintiff fails to allege Defendant Sheahan's personal involvement for the following three reasons: (a) with respect to Plaintiff's medical indifference claim, the Complaint alleges that an unknown "Treating Physician" (i.e., John Doe 1) was the one who failed to properly address Plaintiff's medical concerns and, although it is alleged that Defendant Sheahan knew that Plaintiff endured severe and chronic pain for six months, it was appropriate for Defendant Sheahan to defer to prison medical staff regarding Plaintiff's treatment; (b) with respect to Plaintiff's excessive force claim, the Complaint alleges that a corrections officer (i.e., John Doe 2) injured Plaintiff after using excessive force but fails to allege that Defendant Sheahan had any involvement in the incident; and (c) with respect to Plaintiff's claim that he was improperly denied pain medication while at Walsh, the Complaint fails to identify either a named or unnamed defendant as being responsible for or having any personal involvement in Plaintiff's medical care at Walsh.  (*Id.* at 11-13.)

Fourth, Defendants argue that Plaintiff's ADA claims in his first and second causes of action fail to state a claim because, of the many requests Plaintiff made for reasonable accommodations, only his request for a new wheelchair was denied on the ground that his needs were already being met.  (*Id.* at 13-17.)

Fifth, and finally, Defendants argue that Plaintiff's ADA retaliation claim in his fourth cause of action fails to state a claim for the following two reasons: (a) of the numerous requests Plaintiff made for reasonable accommodations, only his request for a new wheelchair was denied because his needs were already being met and, therefore, there is no evidence of retaliatory intent; and (b) to the extent that Plaintiff argues this denial was retaliatory, Defendants would have made the same decision regardless of retaliatory motive because there were legitimate, nonretaliatory reasons for denying the request.  (*Id.* at 17.)

### b.        Plaintiff's Opposition Memorandum of Law

Generally, Plaintiff asserts six arguments in opposition to Defendants' motion.  (Dkt. No. 42 [Pl.'s Opp'n Mem. of Law].)

First, Plaintiff argues that he administratively exhausted his remedies with respect to his grievances that the grabber tool, shower brushes, and the positioning of his shower bars were inadequate for the following four reasons: (a) Plaintiff filed formal grievances and timely appealed those grievances to each successive level; (b) it was the grievance office's fault for not timely transmitting his appeal to CORC; (c) Defendants cannot side-step this failure by claiming that it would have taken four months to decide his appeal even if it were timely transmitted because 7 N.Y.C.R.R. § 701.5(d)(3)(ii) requires the CORC to render a decision within 30 days from the time the appeal was received; and (d) although 7 N.Y.C.R.R. § 701.6(g) states that

"matters not decided within the time limits may be appealed to the next step," Plaintiff argues that there was no next step after CORC.  (*Id.* at 9.)

With respect to Plaintiff's remaining grievances that were not formally processed, he relies on the Second Circuit's three-part inquiry appropriate for cases involving a failure-to-exhaust defense.  (*Id.* at 10.)  More specifically, Plaintiff argues that he fully exhausted his administrative remedies through informal channels when he informally grieved for Ultram to treat his pain, to have grab bars installed on the outside of his shower, and to be provided with a new wheelchair and two long handled brushes, all of which were resolved in his favor.  (*Id.* at 10-11.)  Under this special circumstance, Plaintiff argues that he fully exhausted his remedies under an exception recognized by this Court in *Goodson v. Silver*, 09-CV-0494, 2012 WL 4449937, at *9 n.20 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J.).  (*Id.* at 10-11.)

In the alternative, Plaintiff argues that the formal grievance procedure was unavailable to him because he made reasonable attempts to exhaust his administrative remedies by submitting grievances, writing letters to Defendant Sheahan and other officials at Five Points C.F., making verbal requests to Ms. Salotti, and retaining an attorney to contact Five Points C.F. and DOCCS concerning his ongoing issues.  (*Id.* at 11-12.)  Plaintiff further argues that his attorney submitted a Notice of Intention to File a Claim to the Office of the Attorney General of the State of New York concerning the denial of reasonable accommodations, pain medication, and medical devices.  (*Id.* 12.)  Therefore, Plaintiff argues that, at a minimum, there is a genuine dispute of material fact regarding whether the formal grievance procedures were available to him at Five Points C.F.  (*Id.*)

With respect to another special-circumstances exception to the exhaustion rule, Plaintiff argues that his attempts to exhaust his available administrative remedies comported with the applicable procedural rules and reflected a reasonable interpretation of those regulations for the following three reasons: (a) there was no policy at Five Points C.F. that mandated or informed inmates that a document must be marked as a "grievance" for it to be treated as such; (b) there was no way for Plaintiff to know that, if he submitted a letter grieving his conditions to the administration, it would not be considered a grievance; and (c) Directive #2614 instructs inmates to make requests for medical treatment and items for daily living through the facility's medical unit (which Plaintiff complied with by making verbal complaints to Ms. Salotti), but there is no indication from the Directive that grieving was an alternative.  (*Id.* at 13.)

Second, Plaintiff argues that a genuine dispute of material fact exists regarding the personal involvement of Defendant Sheahan in the allegations serving as the basis for his § 1983 claims for the following three reasons: (a) Defendant Sheahan acted with deliberate indifference to Plaintiff's medical condition because he received numerous letters from both Plaintiff and his attorney regarding Plaintiff's condition but never confirmed with anyone that Plaintiff's needs were being met; (b) Defendant Sheahan failed to take immediate and/or complete corrective action after visiting Plaintiff in the infirmary on two occasions in which Plaintiff complained to him that he had not received the medical devices he needed to maintain his cleanliness; and (c) in the alternative, Defendant Sheahan was grossly negligent in supervising the subordinates who were deliberately indifferent to Plaintiff's medical needs.  (*Id.* at 15-16.)

In addition, Plaintiff argues that Ms. Salotti was personally involved and deliberately indifferent to his medical needs for the following three reasons: (a) Ms. Salotti was aware that

Plaintiff was being denied medically necessary shower brushes in the SHU but did not provide him with any shower brushes; (b) Ms. Salotti was aware that Plaintiff was in chronic pain and had opined that he should be treated with Ultram but gave Plaintiff over-the-counter pain relievers instead; (c) Ms. Salotti had opined that, if Plaintiff's use of Ultram was ever discontinued, he should be weaned off of it, rather than discontinued without weaning, but on two occasions, Ultram was discontinued without weaning, causing Plaintiff to suffer from withdrawal; and (d) Ms. Salotti was the only medical provider at Five Points C.F. who treated him and, therefore, was directly and personally involved in the constitutional deprivations he suffered.  (*Id.* at 16-17.)

Third, Plaintiff argues that his ADA retaliation claim (which he concedes should have been brought under Title V and not Title II) is not barred by the Eleventh Amendment because his underlying claim is predicated on an alleged violation of Title II of the ADA and the Title II abrogation of sovereign immunity should be extended to his Title V retaliation claim.  (*Id.* at 17-18.)

Fourth, Plaintiff argues that he has alleged facts plausibly suggesting a cause of action for discrimination and failure to provide reasonable accommodations in violation of Title II of the ADA for the following two reasons: (a) the Complaint alleges that Plaintiff's requests for a new wheelchair, two long-handled shower brushes, and shower handles were denied and/or the items provided to him were inadequate; and (b) Plaintiff was denied these accommodations because of his disabilities.  (*Id.* at 19.)

Fifth, Plaintiff argues that he has alleged facts plausibly suggesting a claim for retaliation in violation of Title II of the ADA because he has alleged that, after making his requests for

reasonable accommodations, he was retaliated against by being placed in solitary confinement without his tools and medical devices that were necessary for him to maintain his cleanliness. (*Id.* at 19-20.)

Sixth, and finally, in the alternative, Plaintiff argues that, should the Court dismiss one or all of his ADA claims for failure to state a claim, he should be granted leave to amend his Complaint pursuant to Fed. R. Civ. P. 15(a)(2).  (*Id.* at 20.)

### c.    Defendants' Reply Memorandum of Law

In reply to Plaintiff's opposition memorandum of law, Defendants assert three arguments. (Dkt. No. 43 [Defs.' Reply Mem. of Law].)

First, Defendants argue that Plaintiff has failed to exhaust his administrative remedies. As an initial matter, Defendants argue that, in opposing their motion, Plaintiff acknowledged that he failed to file any formal grievances at Five Points C.F. or Walsh regarding deliberate indifference to his medical care, an alleged excessive force incident at Five Points C.F. in January 2014, unsanitary conditions and lack of reasonable accommodations during his confinement in the SHU in December 2013 at Five Points C.F., and retaliation under the ADA. (*Id.* at 1.)

Furthermore, with respect to Plaintiff's remaining claims, Defendants argue that, under *Woodford v. NGO*, 548 U.S. 81 (2006), and *Macias v. Zenk*, 495 F.3d 37 (2d Cir. 2007), Plaintiff cannot procedurally exhaust his administrative remedies through informal channels.  (*Id.* at 1-4.) In any event, Defendants argue that Plaintiff did not receive a favorable result regarding his request for Ultram at Five Points C.F. because he did not receive this medication until *after* he was transferred to Walsh.  (*Id.* at 4.)

With respect to Plaintiff's argument that the grievance procedure was unavailable to him because only two of his grievances were processed, Defendants argue that Plaintiff failed to file proper grievances.  (*Id.* at 4-5.)  More specifically, Defendants argue that Plaintiff's letters and complaints to various DOCCS' officials were not submitted to the inmate grievance office as required by 7 N.Y.C.R.R. § 701, *et seq.*, and, therefore, they do not meet the definition of a grievance under 7 N.Y.C.R.R. § 701.2(a) (stating that "[a] letter addressed to facility or central office staff is not a grievance").  (*Id.*)  In addition, Defendants argue that it was Plaintiff's choice to write letters, rather than file a formal grievance, and that he knew how to file a proper grievance from past experience because he filed two grievances in 2011 while incarcerated at Orleans C.F. as well as two grievances in 2013 at Five Points C.F. (FPT 27869-13 and 27997-13).  (*Id.* at 5-6.)

With respect to Plaintiff's argument that special circumstances excuse his failure to exhaust his administrative remedies, Defendants argue that this should be disregarded for the following four reasons: (a) Plaintiff retained counsel four months before being transferred to Walsh and two months before filing his second grievance at Five Points C.F. and, therefore, should have known how to file a proper grievance; (b) Plaintiff's prior experience filing proper grievances belies his assertion that he did not know that sending a letter grieving his conditions would not be considered a grievance; (c) contrary to Plaintiff's assertion, page three of Directive 2614 states, in bold capital letters, "**GRIEVANCE PROCEDURE**," which specifically instructs inmates that they can file a grievance, and page four states "**HOW TO MAKE COMPLAINTS**" with sample forms inmates can fill out to make requests for reasonable accommodations; and (d) Plaintiff filled out and signed a draft request for reasonable

accommodations that contains the language "I understand my right to file a grievance in accordance with Directive #4040" above the inmate signature line. (*Id.* at 6-8.)

Second, Defendants argue that, because they never received certain deposition transcripts from Plaintiff, the Court should not consider excerpts from deposition testimony by Defendant Sheahan, Ms. Salotti, and Patrick O'Neill, which were submitted by Plaintiff in support of his opposition to Defendants' motion. (*Id.* at 10.)

Third, Defendants argue that, because Plaintiff was placed in solitary confinement after he received a second misbehavior report for using marijuana and not in retaliation for making requests for reasonable accommodation, Plaintiff's ADA retaliation claim in his fourth cause of action should be dismissed. (*Id.* at 10-11.)

### 2. Plaintiff's Cross-Motion to Join Kristin Salotti as a Defendant

#### a. Plaintiff's Memorandum of Law

In support of his cross-motion, Plaintiff argues that, under Fed. R. Civ. P. 16(b)(4), good cause exists to join Kristin Salotti, a nurse practitioner at Five Points C.F., as a defendant in this action. (Dkt. No. 42, at 6-8 [Pl.'s Opp'n Mem. of Law].) More specifically, Plaintiff acknowledges that this Court's Pretrial Scheduling Order required that any application to join additional parties was to be made on or before September 5, 2014. (*Id.* at 7; Dkt. No. 14, ¶ 4 [Uniform Pretrial Scheduling Order].) However, Plaintiff argues that he was unable to file an application to join Ms. Salotti as a defendant before this deadline expired for the following four reasons: (1) due to his incarceration, Plaintiff's counsel lacked access to Plaintiff and the ability to determine all of the relevant information; (2) it was not until September of 2014 that Plaintiff's counsel was able to ascertain any information regarding Plaintiff's treating providers

and, even then, Plaintiff's counsel believed that the treating provider was a medical doctor and

not a nurse practitioner; (3) despite their diligence throughout this action, it was not until March

of 2015 when Plaintiff's counsel was able to irrefutably determine that Ms. Salotti was Plaintiff's

only treating provider; and (4) Plaintiff did not receive Defendants' discovery responses until

more than ten days after September 5, 2014.  (Dkt. No. 42, at 7 [Pl.'s Opp'n Mem. of Law].)

Finally, Plaintiff argues that Ms. Salotti would not be prejudiced by being joined to this

action because she has already been deposed with her counsel present and was well aware that

she was Plaintiff's only treating provider with respect to the issues relevant in this matter.  (*Id.* at

7-8.)

### b.       Defendants' Opposition to Plaintiff's Cross-Motion

Generally, Defendants assert two arguments in opposition to Plaintiff's cross-motion.

(Dkt. No. 43, at 9-10 [Defs.' Reply Mem. of Law].)  First, Defendants argue that Plaintiff's

reliance on Fed. R. Civ. P. 16 is misplaced because that rule concerns only the scheduling and

conduct of pretrial conferences and has nothing to do with joining a party to a lawsuit.  (*Id.*)

Second, Defendants argue that, apart from proceeding under the wrong rule, Plaintiff failed to

address the correct legal standards and comply with the Local Rules of Practice for this Court for

joining a party to a pending action.  (*Id.* at 10.)

## II.    RELEVANT LEGAL STANDARDS

### A.    Standard Governing a Motion for Summary Judgment

Under Fed. R. Civ. P. 56, summary judgment is warranted if "the movant shows that

there is no genuine dispute as to any material fact and that the movant is entitled to a judgment as

a matter of law." Fed. R. Civ. P. 56(a).  A dispute of fact is "genuine" if "the [record] evidence is

-17-

such that a reasonable jury could return a verdict for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).[4]  As for the materiality requirement, a dispute of fact is "material" if it "might affect the outcome of the suit under the governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248.

In determining whether a genuine issue of material fact exists, the Court must resolve all ambiguities and draw all reasonable inferences against the movant.  *Anderson*, 477 U.S. at 255. In addition, "[the movant] bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the . . . [record] which it believes demonstrate[s] the absence of any genuine issue of material fact." *Celotex v. Catrett*, 477 U.S. 317, 323-24 (1986).  However, when the movant has met its initial burden, the non-movant must come forward with specific facts showing a genuine issue of material fact for trial.  Fed. R. Civ. P. 56(a),(c),(e).

Implied in the above-stated burden-shifting standard is the fact that, where a non-movant willfully fails to respond to a motion for summary judgment, a district court has no duty to perform an independent review of the record to find proof of a factual dispute.[5]  Of course, when a non-movant willfully fails to respond to a motion for summary judgment, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted

---

[4]	As a result, "[c]onclusory allegations, conjecture and speculation . . . are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998) [citation omitted].  As the Supreme Court has explained, "[The non-movant] must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986).

[5]	*Cusamano v. Sobek*, 604 F. Supp.2d 416, 426 & n.2 (N.D.N.Y. 209) (Suddaby, J.) (citing cases).

automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996).  Rather, as indicated above, the Court must assure itself that, based on the undisputed material facts, the law indeed warrants judgment for the movant.  *Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Group, Inc.*, 140 F. Supp.2d 229, 232 (N.D.N.Y. 2001) (Scullin, C.J.); N.D.N.Y. L.R. 7.1(b)(3).  What the non-movant's failure to respond to the motion does is lighten the movant's burden.

For these reasons, this Court has often enforced Local Rule 7.1(a)(3) by deeming facts set forth in a movant's statement of material facts to be admitted, where (1) those facts are supported by evidence in the record, and (2) the non-movant has willfully failed to properly respond to that statement.[6]

Similarly, in this District, where a non-movant has willfully failed to respond to a movant's properly filed and facially meritorious memorandum of law, the non-movant is deemed to have "consented" to the legal arguments contained in that memorandum of law under Local Rule 7.1(b)(3).[7]  Stated another way, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  *See*

---

[6]  Among other things, Local Rule 7.1(a)(3) requires that the non-movant file a response to the movant's Statement of Material Facts, which admits or denies each of the movant's factual assertions in matching numbered paragraphs, and supports any denials with a specific citation to the record where the factual issue arises.  N.D.N.Y. L. R. 7.1(a)(3).

[7]  *See, e.g.*, *Beers v. GMC*, 97-CV-0482, 1999 U.S. Dist. LEXIS 12285, at *27-31 (N.D.N.Y. March 17, 1999) (McCurn, J.) (deeming plaintiff's failure, in his opposition papers, to oppose several arguments by defendants in their motion for summary judgment as consent by plaintiff to the granting of summary judgment for defendants with regard to the claims that the arguments regarded, under Local Rule 7.1[b][3]; *Devito v. Smithkline Beecham Corp.*, 02-CV-0745, 2004 WL 3691343, at *3 (N.D.N.Y. Nov. 29, 2004) (McCurn, J.) (deeming plaintiff's failure to respond to "aspect" of defendant's motion to exclude expert testimony as "a concession by plaintiff that the court should exclude [the expert's] testimony" on that ground).

N.D.N.Y. L.R. 7.1(b)(3) ("Where a properly filed motion is unopposed and the Court determined that the moving party has met its burden to demonstrate entitlement to the relief requested therein . . . ."); *Rusyniak v. Gensini*, 07-CV-0279, 2009 WL 3672105, at \*1, n.1 (N.D.N.Y. Oct. 30, 2009) (Suddaby, J.) (collecting cases); *Este-Green v. Astrue*, 09-CV-0722, 2009 WL2473509, at \*2 & n.3 (N.D.N.Y. Aug. 7, 2009) (Suddaby, J.) (collecting cases).

### B.      Standard Governing Exhaustion of Administrative Remedies

The Prison Litigation Reform Act of 1995 ("PLRA") requires that prisoners who bring suit in federal court must first exhaust their available administrative remedies: "No action shall be brought with respect to prison conditions under §1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e.  The PLRA was enacted "to reduce the quantity and improve the quality of prisoner suits" by "afford[ing] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case."  *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  In this regard, exhaustion serves two major purposes.  First, it protects "administrative agency authority" by giving the agency "an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court, and it discourages disregard of the agency's procedures."  *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).  Second, exhaustion promotes efficiency because (a) "[c]laims generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court," and (b) "even where a controversy survives administrative review, exhaustion of the administrative procedure may produce a useful record for subsequent judicial consideration."  *Woodford*, 548 U.S. at 89.  "[T]he PLRA's exhaustion requirement applies to all inmate suits

about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter*, 534 U.S. at 532.

In accordance with the PLRA, DOCCS has made available a well-established inmate grievance program. 7 N.Y.C.R.R. § 701.7. Generally, the DOCCS Inmate Grievance Program ("IGP") involves the following three-step procedure for the filing of grievances. 7 N.Y.C.R.R. §§ 701.5, 701.6(g), 701.7.[8] First, an inmate must file a complaint with the facility's IGP clerk within a certain number of days of the alleged occurrence.[9] If a grievance complaint form is not readily available, a complaint may be submitted on plain paper. A representative of the facility's inmate grievance resolution committee ("IGRC") has a certain number of days from receipt of the grievance to informally resolve the issue. If there is no such informal resolution, then the full IGRC conducts a hearing within a certain number of days of receipt of the grievance, and issues a written decision within a certain number of days of the conclusion of the hearing. Second, a grievant may appeal the IGRC decision to the facility's superintendent within a certain number of days of receipt of the IGRC's written decision. The superintendent is to issue a written decision within a certain number of days of receipt of the grievant's appeal. Third, a grievant may appeal to CORC within a certain number of days of receipt of the superintendent's written decision. CORC is to render a written decision within a certain number of days of receipt of the appeal.

_____

[8]       *See also Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *1 & n.1 (N.D.N.Y. March 31, 2010) [citation omitted].

[9]       The Court uses the term "a certain number of days" rather than a particular time period because (1) since the three-step process was instituted, the time periods imposed by the process have changed, and (2) the time periods governing any particular grievance depend on the regulations and directives pending during the time in question.

It is important to note that these procedural requirements contain several safeguards.  For example, if an inmate could not file such a complaint within the required time period after the alleged occurrence, he or she could apply to the facility's IGP Supervisor for an exception to the time limit based on mitigating circumstances.  If that application was denied, the inmate could file a complaint complaining that the application was wrongfully denied.[10]  Moreover, any failure by the IGRC or the superintendent to timely respond to a grievance or first-level appeal, respectively, can–and must–be appealed to the next level, including CORC, to complete the grievance process.[11]

Despite the plain language of 7 N.Y.C.R.R. § 701.6(g), there appears to be some confusion regarding whether the IGRC's nonresponse must be appealed to the superintendent where the plaintiff's grievance was never assigned a grievance number.[12]  After carefully reviewing the case law, the Court finds that the weight of authority (and the better-reasoned authority) answers this question in the affirmative.  This point of law has implicitly been recognized by the Second Circuit,[13] and has explicitly been recognized by district courts in the

---

[10]     *See Murray v. Palmer,* 03-CV-1010, 2010 WL 1235591, at *2 & n.3 (N.D.N.Y. March 31, 2010) (citing *Groves v. Knight*, 05-CV-0183, Decision and Order at 3 [N.D.N.Y. filed Aug. 4, 2009], an appeal from which was subsequently dismissed as frivolous, *see Groves v. Knight*, No. 09-3641, Mandate [2d Cir. filed Jan. 15, 2010].)

[11]     7 N.Y.C.R.R. § 701.6(g) ("[M]atters not decided within the time limits may be appealed to the next step."); *see also Murray,* 2010 WL 1235591, at *2 & n.4 [collecting cases].

[12]     *Murray,* 2010 WL 1235591, at *2 & n.5 [citing cases].

[13]     *See Collins v. Doe*, 597 F. App'x 34, 34 (2d Cir. 2015) ("[T]he district court properly dismissed the complaint for failure to exhaust administrative remedies."), *aff'g, Collins v. Caron*, 10-CV-1527, 2014 WL 296859, at *2-3, 6-8 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.) (finding lack of special circumstances where inmate failed to properly appeal from the "non-processing" of a grievance through lack of assignment of number); *cf. Hernandez v. Coffey*, 582

-22-

Northern District,[14] Southern District,[15] and Western District.[16]  The Court notes that, if the plaintiff attaches to his appeal a copy of his grievance (or even if he adequately describes, in his appeal to the superintendent, the substance of that grievance), there is something for the superintendent to review.[17]

_____

F.3d 303, 305, 309, n.3 (2d Cir. 2009) ("Our ruling in no way suggests that we agree with Hernandez's arguments regarding exhaustion or justification for failure to exhaust [which included an argument that the Inmate Grievance Program was not available to him because, when he filed a grievance at the first stage of the Program, he received no response and his grievance was not assigned a grievance number].").

[14]      *See, e.g., Kelly v. Smith,* 985 F. Supp.2d 275, 291 (N.D.N.Y. 2013) (Suddaby, J.) ("Plaintiff did not complete the exhaustion process with regard to either of those documents. The (alleged) non-processing of the first document was never appealed (in a timely fashion or otherwise) to the Superintendent and then CORC."); *Sidney v. Caron*, 09-CV-1326, 2012 WL 4380392, at *5 (N.D.N.Y. Sept. 25, 2012) (Suddaby, J) ("[E]ven if Plaintiff did submit a second grievance that was subsequently not filed, he had the ability–and the duty–to file an appeal regarding the non-processing of that grievance."); *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *15, 18 & n.46 (N.D.N.Y. June 20, 2008) (Hurd, J., adopting Report-Recommendation of Lowe, M.J.) ("[E]ven if Great Meadow C.F. did not . . . have a functioning grievance-recording process (thus, resulting in Plaintiff's alleged grievance never being responded to), Plaintiff still had the duty to appeal that non-response to the next level."); *Midalgo v. Bass*, 03-CV-1128, 2006 WL 2795332, at *7 (N.D.N.Y. Sept. 26, 2006) (Mordue, C.J., adopting Report-Recommendation of Treece, M.J.) (observing that plaintiff was "requir[ed]" to seek an appeal to the superintendent, even though he never received a response to his grievance of April 26, 2003, which was never assigned a grievance number).

[15]      *See, e.g., Hernandez v. Coffey*, 99-CV-11615, 2003 WL 22241431, at *4 (S.D.N.Y. Sept. 29, 2003) (rejecting plaintiff's argument that he could not have exhausted because he never received a grievance number, finding he could nonetheless have appealed any such non-response to the next level).

[16]      *See, e.g., Collins v. Cunningham,* 06-CV-0420, 2009 WL 2163214, at *3, 6 (W.D.N.Y. July 20, 2009) (rejecting plaintiff's argument that his administrative remedies were not available where his grievance of March 20, 2004, was not assigned a grievance number).

[17]      *See Collins v. Caron*, 10-CV-1527, 2014 WL 296859, at *3 (N.D.N.Y. Jan. 27, 2014) (Suddaby, J.) ("The Court notes that, if the plaintiff attaches to his appeal a copy of his grievance (or even if he adequately describes, in his appeal to the superintendent, the substance of that grievance), there is something for the superintendent to review.")*, aff'd, Collins v. Doe*, 597 F. App'x 34, 34 (2d Cir. 2015) ("[T]he district court properly dismissed the complaint for failure to exhaust administrative remedies.").

Generally, if a prisoner has failed to properly follow each of the required three steps of the above-described grievance procedure prior to commencing litigation, he has failed to exhaust his administrative remedies, and his claims are subject to dismissal. *Woodford*, 548 U.S. at 93; *Porter*, 534 U.S. at 524; *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006). However, a plaintiff's failure to exhaust does not end the inquiry. The Second Circuit has held that a three-part inquiry is appropriate where a defendant contends that a prisoner has failed to exhaust his available administrative remedies, as required by the PLRA. *Hemphill v. State of New York*, 380 F.3d 680, 686, 691 (2d Cir. 2004), *accord*, *Ruggiero*, 467 F.3d at 175. First, "the court must ask whether [the] administrative remedies [not pursued by the prisoner] were in fact 'available' to the prisoner." *Hemphill*, 380 F.3d at 686 (citation omitted). Second, if those remedies were available, "the court should . . . inquire as to whether [some or all of] the defendants may have forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it . . . or whether the defendants' own actions inhibiting the [prisoner's] exhaustion of remedies may estop one or more of the defendants from raising the plaintiff's failure to exhaust as a defense." *Id.* [citations omitted]. Third, if the remedies were available and some of the defendants did not forfeit, and were not estopped from raising, the non-exhaustion defense, "the Court should consider whether 'special circumstances' have been plausibly alleged that justify the prisoner's failure to comply with the administrative procedural requirements." *Id.* [citations and internal quotations omitted].

## III.   ANALYSIS

### A.   Whether Plaintiff Failed to Exhaust His Administrative Remedies

For the reasons stated in Defendants' memorandum of law and reply memorandum of law, the Court answers this question in the affirmative. (Dkt. No. 37, Attach. 6, at 2-9 [Defs.'

Mem. of Law]; Dkt. No. 43, at 1-8 [Defs.' Reply Mem. of Law].)  To those reasons, the Court

adds the following analysis.

### 1.      Availability of the Formal Grievance Procedure

After carefully considering the matter, the Court finds that the formal grievance procedure

was available to Plaintiff.  Examples of when courts have found unavailability include "'where

plaintiff is unaware of the grievance procedures or did not understand it or where defendants'

behavior prevents plaintiff from seeking administrative remedies.'" *Murray*, 2010 WL 1235591,

at *5 (quoting *Hargrove v. Riley*, 04-CV-4587, 2007 WL 389003, at *8 [E.D.N.Y. Jan. 31,

2007]).  Here, the Court finds that the grievance procedure was available to Plaintiff because (a)

before and/or after the time in question Plaintiff filed and appealed grievances at Orleans C.F.

and Five Points C.F., (b) he had retained counsel who could have advised him regarding the

grievance procedure, and (c) he knew how to file a proper grievance from his prior experience as

an inmate at Orleans C.F. in 2011 as well as when he was at Five Points C.F.

In addition to these reasons, the Court finds that there is a lack of admissible record

evidence demonstrating that Plaintiff unsuccessfully filed other grievances during the time in

question.  As discussed in Part I.C.1.b. of this Decision and Order, Plaintiff argues that the

grievance procedure at Five Points C.F. was unavailable to him because he filed numerous

grievances but only two were processed.  (Dkt. No. 42, at 12 [Pl.'s Opp'n Mem. of Law].)  As an

initial matter, the admissible record evidence demonstrates that many of Plaintiff's complaints

were made in the form of letters and verbal complaints to prison officials but were not properly

filed as formal grievances.  For example, Plaintiff's counsel has attached numerous letters written

by either Plaintiff or Plaintiff's former attorney to various prison officials at Five Points C.F.

regarding his complaints.  (Dkt. No. 41, ¶¶ 3-7, 9-10, 12-15, 17-19.)  However, for the reasons

discussed below in Part III.A.3. of this Decision and Order, informal complaints and letters

written to prison officials are not considered formal grievances under 7 N.Y.C.R.R. § 701.2(a)

and/or for purposes of the Inmate Grievance Program.

Similarly, Plaintiff's deposition testimony is inconsistent with respect to how many

grievances he filed while an inmate at Five Points C.F.  For example, Plaintiff testified as

follows:

Q:     Did you ever file a request for reasonable accommodation about the problem you
       were having getting around in the horticulture program?

A:     Yes.

Q:     Do you know how many you filed?

A:     *A couple.*

. . . .

Q:     Did you ever get back a form that said your request for help in getting around
       horticulture was denied?

A:     No.

Q:     Did you file a grievance about it?

A:     Yes.

Q:     Did you file more than one grievance?

A:     I – I must have filed *thousands* of grievances since I've been incarcerated.

Q:     But I'm just referring to Five Points.

A:     At least *hundreds* of them in there.

Q:     And – okay.  So you filed hundreds of grievances at Five Points?

A:     *Many of them.*

-26-

(Dkt. No. 41, at 118, 54:5-55:16 [Gizewski Dep.]) (emphasis added).  Plaintiff's internally

inconsistent testimony, coupled with the lack of external record evidence supporting his

argument that he filed numerous grievances while an inmate at Five Points C.F., is insufficient to

create a genuine dispute of material fact regarding the availability of the formal grievance

procedure.  *See Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005) (explaining that

district court could resolve issues of credibility on motion for summary judgment in narrow

circumstances where [1] the testimony of non-movant is largely unsubstantiated by any other

direct evidence, and [2] that testimony is so incomplete and/or replete with inconsistencies and

improbabilities that, even after drawing all inferences in the light most favorable to the non-

movant, no reasonable jury could find for the non-movant).

   **2.**   **Estoppel**[18]

   After carefully considering the matter, the Court finds that Defendants did not forfeit the

affirmative defense of non-exhaustion by failing to raise or preserve it, or by taking actions that

inhibited Plaintiff's exhaustion of remedies.  Defendants' Answer timely asserted this affirmative

defense.  (Dkt. No. 10, ¶ 16 [Defs.' Answer].)  Moreover, Plaintiff has failed to adduce any

admissible record evidence that it was Defendants who in any way interfered with Plaintiff's

ability to file grievances during the time in question.  Therefore, estoppel does not excuse

Plaintiff's failure to exhaust his administrative remedies.

---

[18]  The Court notes that Plaintiff did not argue in his opposition memorandum of law
that estoppel applies as a ground for holding that exhaustion does not apply.  Nonetheless, the
Court will consider the issue for the sake of thoroughness.

It is important to note that a defendant in an action may not be estopped from asserting the affirmative defense of failure to exhaust administrative remedies based on the actions (or inactions) of *other* individuals.  This point of law is clear from Second Circuit cases.[19] Furthermore, this point of law has been relied on by district courts in the Northern District,[20]

---

[19]        *See Amador v. Andrews*, 655 F.3d 89, 102 (2d Cir. 2011) ("The second part considers whether defendants forfeited the affirmative defense of non-exhaustion by failing to raise or preserve it, or whether defendants' *own* actions inhibiting the inmate's exhaustion of remedies estops one or more of the defendants from raising the exhaustion defense.") (emphasis added); *Ruggiero v. County of Orange,* 467 F.3d 170, 178 (2d Cir. 2006) ("In our prior cases recognizing that *defendants' actions* may estop them from raising non-exhaustion as a defense . . . .  Ruggiero does not allege beatings or threats of retaliation for filing a grievance or that he made any attempt to file a grievance and was denied that opportunity *by Defendants-Appellants*.") (emphasis added); *Hemphill v. New York*, 380 F.3d 680, 689 (2d Cir. 2004) (explaining that, where several defendants played different roles in the acts giving rise to estoppel, "it is possible that some individual defendants may be estopped, *while other may not be*") (emphasis added).

[20]        *See, e.g., Belile v. Griffin*, 11-CV-0092, 2013 WL 1776086, at *9 (N.D.N.Y. Feb. 12, 2013) (Peebles, M.J.), *adopted by* 2013 WL 1291720 (N.D.N.Y. March 27, 2013) (McAvoy, J.); *Bailey v. Fortier,* 09-CV-0742, 2013 WL 310306, at *2 (N.D.N.Y. Jan. 25, 2013) (Sharpe, C.J.); *Thompson v. Bellevue Hosp.*, 09-CV-1038, 2011 WL 4369132, at *12 (N.D.N.Y. Aug. 29, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4369132 (N.D.N.Y. Aug. 29, 2011) (Mordue, C.J.); *Calloway v. Grimshaw*, 09-CV-1354, 2011 WL 4345299, at *4 (N.D.N.Y. Aug. 10, 2011) (Lowe, M.J.), *adopted by* 2011 WL 4345296 (N.D.N.Y. Sep.15, 2011) (McAvoy, J.); *Murray v. Palmer,* 03-CV-1010,  2010 WL 1235591, at *5 & n.26 (N.D.N.Y. March 31, 2010) (Suddaby, J.); *Snyder v. Whittier,* 05-CV-1284, 2009 WL 691940, at *9 (N.D.N.Y. March 12, 2009) (Report-Recommendation of Peebles, M.J., adopted by McAvoy, J.); *Murray v. Palmer*, 03-CV-1010, 2008 WL 2522324, at *19 (N.D.N.Y. June 20, 2008) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.); *McCloud v. Tureglio*, 07-CV-0650, 2008 WL 1772305, at *12 (N.D.N.Y. Apr. 15, 2008) (Report-Recommendation of Lowe, M.J., adopted by Mordue, C.J.); *Shaheen v. McIntyre*, 05-CV-0173, 2007 WL 3274835, at *16 (N.D.N.Y. Nov.5, 2007) (Report-Recommendation of Lowe, M.J., adopted by McAvoy, J.); *Gill v. Frawley*, 02-CV-1380, 2006 WL 1742378, at *12 (N.D.N.Y. June 22, 2006) (Report-Recommendation by Lowe, M.J., adopted by McAvoy, J.); *Smith v. Woods*, 03-CV-0480, 2006 WL 1133247, at *16 (N.D.N.Y. Apr.24, 2006) (Report-Recommendation of Lowe, M.J., adopted by Hurd, J.).

Southern District,[21] Eastern District,[22] and Western District.[23]

The Court notes that a contrary interpretation of the second part of the Second Circuit's three-part exhaustion inquiry would turn the ancient doctrine of estoppel on its head, transforming it–in Orwellian fashion–into one of "vicarious estoppel." *See Black's Law Dictionary* at 629 (9th ed) (defining "estoppel" as "[a] bar that prevents one from asserting a claim or right that contradicts what one has said or done before . . . ."). Moreover, such an invention would be wholly unnecessary: the vicarious conduct sought to be protected against is already protected against by the "special circumstances" inquiry established by the Second Circuit.

Finally, while it may be argued that such an interpretation of the doctrine of estoppel would nonetheless be appropriate because the purpose of the PLRA is to enable the institution to resolve disputes efficiently rather than protect the individual, prisoner civil rights suits are suits against prison officials in their individual capacities rather than suits against them in their official capacities (which would effectively be suits against the State and thus be barred by the Eleventh Amendment). As a result, the crux of the second part of the Second Circuit's three-part exhaustion inquiry is whether the officials may avail themselves of that defense, not whether the institution may avail itself of the defense.

For all of these reasons, to the extent that Plaintiff alleges that the conduct of a non-defendant correctional employee (such as employees working in the inmate grievance office who

---

[21]     *See, e.g., Collins v. Goord*, 438 F. Supp.2d 399, 415, n.16 (S.D.N.Y. 2006).

[22]     *See, e.g., McCullough v. Burroughs*, 04-CV-3216, 2005 WL 3164248, at *4 (E.D.N.Y. Nov. 29, 2005).

[23]     *See, e.g., Barad v. Comstock*, 03-CV-0736, 2005 WL 1579794, at *6 (W.D.N.Y. June 30, 2005).

failed to forward his appeal to CORC) inhibited him from exhausting his administrative remedies, those allegations cannot estop Defendants from asserting failure-to-exhaust as a defense.

### 3.    Special Circumstances Justifying Plaintiff's Failure to Exhaust

After carefully considering the matter, the Court finds that special circumstances did not exist to justify a failure to exhaust.[24]  The Court notes that, contrary to Plaintiff's assertion, Directive No. 2614 makes clear that inmates may file a formal grievance.  (Dkt. No. 41, at 94 [Ex. X to Blit Decl.].)  Indeed, as discussed above in Part I.C.1.c. of this Decision and Order, the Directive states in conspicuous lettering "**GRIEVANCE PROCEDURE**," "**HOW TO MAKE COMPLAINTS**," and even provides a sample form for inmates to make requests for reasonable accommodation.  (*Id.* at 94-96.)

Furthermore, with respect to Grievance No. FPT-27997-13, it is apparent that Plaintiff received a determination from CORC on October 1, 2014, which is approximately eight months after Plaintiff commenced this action on February 4, 2014.  (Dkt. No. 37, Attach. 3, ¶ 12 [Hale Decl.] [stating that, due to an administrative error, Plaintiff's appeal was mailed to CORC on April 30, 2013, and was then decided by CORC on October 1, 2014].)[25]  It is well established that "[r]eceiving a decision from CORC *after* filing a federal lawsuit does not satisfy the PLRA's

---

[24]    Because the Court finds that evidence of special circumstances does not exist on the current record, it need not, and does not, reach the issue of the impact of the U.S. Supreme Court's recent decision in *Ross v. Blake*, No. 15-339, 2016 WL 3128839 (S. Ct. June 6, 2016), on the Second Circuit's special circumstances exception.

[25]    With respect to the other grievance formally processed at Five Points C.F. (Grievance No. FPT-27869-13), because the parties agree that it is not relevant to the present matter, the Court will not address it in this Decision and Order.  (Dkt. No. 37, Attach. 1, ¶¶ 5-6 [Defs.' Rule 7.1 Statement].)

requirement that administrative remedies be exhausted *before* filing suit, and any claim not exhausted prior to commencement of the suit must be dismissed without prejudice." *Fofana v. Moss*, 15-CV-0188, 2016 WL 1237796, at *3 (N.D.N.Y. Mar. 4, 2016) (Dancks, M.J.); *accord*, *Burgos v. Craig*, 307 F. App'x 469, 470 (2d Cir. 2008); *Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001), *abrogated in part on other grounds by Porter v. Nussle*, 534 U.S. 516 (2002). Although the Court is sympathetic to the fact that it was the inmate grievance office that failed to transmit Plaintiff's appeal to CORC until five months after he had filed it, Plaintiff is also at fault for not taking any further action during this time period.  More specifically, 7 N.Y.C.R.R § 701.5(d)(3)(i) states that "[i]f a grievant does not receive a copy of the written notice of receipt [by CORC] within 45 days of filing an appeal, *the grievant should contact the IGP supervisor in writing to confirm that the appeal was filed and transmitted to CORC*." (Emphasis added).  Nor is the delay in rendering a decision on Plaintiff's appeal a defense to the exhaustion requirement. *See Casey v. Brockley*, 13-CV-1271, 2015 WL 8008728, at *6 (N.D.N.Y. Nov. 9, 2015) (Dancks, M.J.) (stating that "CORC's failure to act within the time frame set out in the regulations does not constitute a special circumstance justifying the failure to exhaust") (collecting cases); *Guillory v. Haywood*, 13-CV-1564, 2015 WL 268933, at *12 (N.D.N.Y. Jan. 21, 2015) (D'Agostino, J.) (stating that, "although regulations require CORC to respond within thirty days, its failure to do so is not a 'special circumstance' which might defeat an exhaustion defense").

    Finally, the Court finds that Plaintiff has failed to administratively exhaust the complaints he made through informal channels.  "Contrary to [plaintiff's] suggestion, *Marvin* [*v. Goord*, 255 F.3d 40 (2d Cir. 2001)] does not imply that a prisoner has exhausted his administrative remedies every time he receives his desired relief through informal channels." *Ruggiero*, 467 F.3d at 177-

78.  Furthermore, "[m]erely [a]lert[ing] . . . prison officials as to the nature of the wrong for

which redress is sought does not constitute proper exhaustion." *Macias v. Zenk*, 495 F.3d 37, 44

(2d Cir. 2007) (internal citations and quotation marks omitted); *see also Perez v. City of New

York*, 14-CV-7502, 2015 WL 3652511, at *4 (S.D.N.Y. June 11, 2015) (explaining that the

"[p]laintiff's allegation that he advised others of his grievance does not excuse his failure to

exhaust the administrative process specified in the IGRP").  "Regardless of whether . . . informal

complaints put the prison officials on notice of his grievance 'in a substantive sense,' . . . to

satisfy the PLRA, a prisoner must also procedurally exhaust his available remedies." *Macias*, 495

F.3d at 43 (quoting *Johnson v. Testman*, 380 F.3d 691, 697-98 [2d Cir. 2004]).  Substantive

notice alone is insufficient because "[t]he benefits of exhaustion can be realized only if the prison

grievance system is given a fair opportunity to consider the grievance," and "[t]he prison

grievance system will not have such an opportunity unless the grievant complies with the

system's critical procedural rules." *Woodford*, 548 U.S. at 95.

Accordingly, "[c]ourts have repeatedly held that complaint letters to the . . . facility

[s]uperintendent do not satisfy the PLRA's exhaustion requirement." *Nelson v. Rodas*, 01-CV-

7887, 2002 WL 31075804, at *3 (S.D.N.Y. Sept. 17, 2002) (collecting cases); *see also Lopez*,

2015 5732076, at * 8 (holding that letter sent to superintendent from plaintiff's attorney did not

excuse exhaustion); *accord*, *Dabney v. Pegano*, 604 F. App'x 1, 5 (2d Cir. 2015).  Moreover,

writing to the superintendent does not "preclude submission of a formal grievance," *Amador*, 655

F.3d at 97, nor does it preclude the requirement that an inmate must go through the appeal

process if the superintendent fails to act.  *See McNair v. Sgt. Jones*, 01-CV-3253, 2002 WL

31082948, at *8 (S.D.N.Y. Sept. 18, 2002) (noting that the failure to follow the appeal process

alone "means that [a plaintiff] has not exhausted his administrative remedies"); *accord*, 7

N.Y.C.R.R. §§ 701.5(a), 701.8(g).

Here, it is apparent that Plaintiff made various complaints to both Ms. Salotti and

Defendant Sheahan, both verbally and in writing, through informal channels.  However, these

informal complaints do not constitute grievances for purposes of the Inmate Grievance Program,

nor are they a substitute for filing a proper grievance.[26]

For all of these reasons, Plaintiff has failed to create a genuine dispute of material fact

regarding a special circumstance justifying his failure to exhaust his administrative remedies.

### 4.   Dismissal With or Without Prejudice

"Ordinarily, the proper remedy where a prisoner has failed to satisfy the exhaustion

requirement is to dismiss the complaint without prejudice, to give the inmate a chance to exhaust

his administrative remedies and then refile his complaint."  *Brown v. Napoli*, 687 F. Supp. 2d

295, 298 (W.D.N.Y. 2009); *see also Morales v. Mackalm*, 278 F.3d 126, 128 (2d Cir. 2002)

(dismissal for failure to exhaust should be without prejudice to refiling following exhaustion).

"This is so even when the issue is decided on a motion for summary judgment."  *Mateo v.

Corebine*, 09-CV-4811, 2010 WL 3629515, at *7 (S.D.N.Y. Sept. 17, 2010) (collecting cases).

Where a plaintiff has fully exhausted his administrative remedies after filing suit, the complaint

---

[26]     7 N.Y.C.R.R. § 701.2(a) states that a grievance is

a complaint, filed with an IGP clerk, about the substance of
application of any written or unwritten policy, regulation,
procedure or rule of the [DOCCS] or any of its program units, or
the lack of a policy, regulation, procedure or rule.  *A letter
addressed to facility or central office staff is not a grievance*.  7
N.Y.C.R.R. § 701.2(a) (emphasis added).

should still be dismissed without prejudice.  *See Mendez v. Artuz*, 01-CV-4157, 2002 WL 313796, at *2 (S.D.N.Y. Feb. 27, 2002) (stating that "the greater good forbids allowing a case to proceed where administrative remedies have been exhausted while the complaint is pending, and requires in such a case dismissal of the complaint, to be re-filed, if the plaintiff wishes, with the addition of paragraphs explaining how administrative remedies have been exhausted"). Accordingly, the Court finds that, at the very least, the entirety of Plaintiff's Complaint should be dismissed without prejudice.[27]  However, for the reasons discussed below, the Court finds that Plaintiff's first, second, and fourth causes of action against DOCCS should be dismissed with prejudice.  Furthermore, Plaintiff's third cause of action against Defendant Sheahan and John Doe 1 should also be dismissed with prejudice.

**B.  Whether Plaintiff's ADA Retaliation Claim Is Barred by the Eleventh Amendment**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Plaintiff's opposition memorandum of law.  (Dkt. No. 42, at 17-18 [Pl.'s Opp'n Mem. of Law].)  *See also Maioriello v. N.Y.S. Office for People with Dev. Disabilities*, 14-CV-0214, 2015 WL 5749879, at *12 (N.D.N.Y. Sept. 30, 2015) (Suddaby, J.) (holding that the Eleventh Amendment did not bar plaintiff's ADA Title V retaliation claim where it was predicated on Title II) (citing cases); *accord*, *Bylsma v. Hawaii Pub. Hous. Auth.*, 951 F. Supp. 2d 1116, 1121 (D. Haw. 2013) (citing cases).

_____

[27]     The Court is not at liberty to stay Plaintiff's action.  *See McCoy v. Goord*, 255 F. Supp. 2d 233, 254 (S.D.N.Y. 2003) ("In the context of § 1983 and the PLRA . . . courts have squarely held that the district court may not stay the action pending exhaustion, as Congress eliminated the authority to do so by enacting the PLRA . . . . Pre-suit exhaustion is thus required.").  Therefore, if Plaintiff's claims are at risk of becoming time-barred, the parties will have to address that issue at the appropriate time.

**C.      Whether Plaintiff's § 1983 Claims Should Be Dismissed for Lack of Personal Involvement**

**1.      Superintendent Sheahan**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 37, Attach. 6, at 11-13 [Defs.' Mem. of Law].)  To those reasons, the Court adds only that the fact that Plaintiff wrote letters to Defendant Sheahan and spoke with him directly regarding his complaints on one or two occasions (Dkt. No. 42, at 15-16 [Pl.'s Opp'n Mem. of Law]) are not, in and of themselves, sufficient to raise a genuine dispute of material fact regarding his personal involvement.  *See Funderburke v. Canfield*, 13-CV-6128, 2016 WL 831974, at *9 (W.D.N.Y. Feb. 29, 2016) (holding that plaintiff failed to create a genuine dispute of material fact regarding superintendent's personal involvement where plaintiff wrote to the superintendent on several occasions but received no response and where plaintiff spoke directly to superintendent regarding his complaints but superintendent did nothing); *Jones v. Tompkins*, 12-CV-0057, 2014 WL 860334, at *5 (W.D.N.Y. Mar. 5, 2014) ("The fact that the plaintiff spoke directly with the supervisory officials, may not be sufficient personal involvement for the maintenance of a § 1983 claim"); *accord*, *Rosales v. Kikendall*, 677 F. Supp. 2d 643, 650-51 (W.D.N.Y. 2010).  Accordingly, Plaintiff's third cause of action against Defendant Sheahan is dismissed with prejudice.

**2.      Kristen Salotti**

Because the Court is denying Plaintiff's cross-motion to join Ms. Salotti as a defendant for the reasons discussed below in Part III.E. of this Decision and Order, the Court need not, and does not, consider Plaintiff's § 1983 claim against Ms. Salotti.

### D.      Whether Plaintiff's ADA Claims Should Be Dismissed

After carefully considering the matter, the Court answers this question in the affirmative

for the reasons stated in Defendants' memorandum of law.  (Dkt. No. 37, Attach. 6, at 8-9, 13-17

[Defs.' Mem. of Law].)  To those reasons, the Court adds the following three points.

First, Plaintiff incorrectly analyzes Defendants' arguments regarding his ADA claims

under the standard governing a motion to dismiss under Fed. R. Civ. P. 12(b)(6) based upon

Defendants having entitled their arguments "The ADA Claims Fail to State a Cause of Action."

(*Id.*)  Although Defendants used this heading, Defendants filed a motion for summary judgment

and relied on admissible record evidence outside of the pleadings in support of their arguments.

(Dkt. No. 37, Attach. 6, at 13-17 [Defs.' Mem. of Law].)  Therefore, the Court may not consider

Defendants' arguments merely under the legal standard appropriate for a motion to dismiss.[28]

Simply stated, Plaintiff's strategic choice to proceed without analyzing Defendants' arguments in

the alterative under the summary judgment standard was at his own risk.

Second, Plaintiff has failed to adduce admissible record evidence sufficient to create a

genuine dispute of material fact regarding whether he fully exhausted his administrative remedies

with respect to these claims.  Although Defendants argue that Plaintiff failed to grieve the

substance of these three claims (Dkt. No. 37, Attach. 6, at 8-9 [Defs.' Mem. of Law]), Plaintiff

---

[28]      Of course, in a motion for summary judgment under Fed. R. Civ. P. 56, a
defendant may assert an argument that the plaintiff has failed to state a claim under Fed. R. Civ.
P. 12(b)(6).  *See Schwartz v. Compagnise Gen. Transatlantique*, 405 F.2d 270, 273-74 (2d Cir.
1968) ("Where appropriate, a trial judge may dismiss for failure to state a cause of action upon
motion for summary judgment.").  In such a circumstance, the Court need not give prior notice to
the party whose pleading is being analyzed.  *See Katz v. Molic*, 128 F.R.D. 35, 37-38 (S.D.N.Y.
1989) ("This Court finds that . . . a conversion [of a Rule 56 summary judgment motion to a Rule
12(b)(6) motion to dismiss the complaint] is proper with or without notice to the parties.").

fails to respond to this argument in his opposition memorandum of law.  As discussed above, in Part II.A. of this Decision and Order, in this District, when a non-movant fails to oppose a legal argument asserted by a movant, the movant may succeed on the argument by showing that the argument possesses facial merit, which has appropriately been characterized as a "modest" burden.  The Court finds that Defendants have met this modest burden, in part, for the reasons stated in their memorandum of law.  (*Id.*)  In addition, the Court has carefully reviewed the admissible record evidence submitted by Plaintiff in opposition to Defendants' motion and finds that, during his incarceration, Plaintiff's attorney sent letters to Superintendent Sheahan regarding the substance of Plaintiff's ADA claims.  (Dkt. No. 41, at 51-56 [Exs. "P" & "Q" to Blit Decl.].)  However, as discussed above in Part III.A.3. of this Decision and Order, letters sent to a facility's superintendent do not satisfy the PLRA's exhaustion requirement.  Furthermore, an inmate must go through the appeal process if the superintendent fails to act.  Here, although one of the letters requests that it be attached to a grievance form and filed as an official grievance,[29] Plaintiff has failed to submit admissible record evidence demonstrating whether he received a response and/or whether he appealed the grievance to the next level.  (Dkt. No. 41, at 55 [Ex. "Q" to Blit Decl.].)

    Third, with respect to Plaintiff's retaliation claim, it is apparent that Defendants' basis for dismissal of this claim is raised for the first time in Point IV of their reply memorandum of law. More specifically, Defendants argue in their memorandum of law that they have a legitimate, nonretaliatory reason for denying Plaintiff's request for a new wheelchair and that this denial was

---

[29]    For the sake of brevity, the Court will not linger on the fact that this unusual attempt to submit a grievance failed to specifically identify the individual(s) alleged to have committed wrongdoing and the date(s) on which that alleged wrongdoing was committed.

not in retaliation for Plaintiff having made a request for a reasonable accommodation.  (Dkt. No. 37, Attach. 6, at 17 [Defs.' Mem. of Law].)  After reviewing Plaintiff's opposition memorandum of law, however, Defendants argue in their reply memorandum of law that they had "interpreted the claim to mean that plaintiff had one reasonable accommodation request for a new wheelchair denied because of retaliation. . . . Instead, plaintiff contends that [he] was transferred to the [SHU] 'in retaliation for his reasonable accommodation requests.'" (Dkt. No. 43, at 10-11 [Defs.' Reply Mem. of Law].)  Defendants then argue that Plaintiff's retaliation claim should still be dismissed because they had a legitimate, nonretaliatory reason for placing Plaintiff in the SHU. (*Id.* at 11.)  Specifically, Defendants argue that Plaintiff testified at his deposition that, on December 16, 2013, he received a second misbehavior report at Five Points C.F. for using marijuana.  (*Id.*)  As a result, Plaintiff went to a tier hearing and pled guilty to the charge and was sentenced to a year in SHU by a hearing officer.  (*Id.*)

Because this argument was raised for the first time in Defendants' reply memorandum of law, it would not ordinarily be considered.  *See Knipe v. Skinner*, 999 F.2d 708, 710-11 (2d Cir. 1993) ("Arguments may not be made for the first time in a reply brief."); *Playboy Enter., Inc. v. Dumas*, 960 F. Supp. 710, 720 n.7 (S.D.N.Y. 1997) ("Arguments made for the first time in a reply brief need not be considered by a court.").  However, in a Text Order dated May 31, 2016, the Court *sua sponte* granted Plaintiff seven days to file a sur-reply to address the arguments raised in Point IV of Defendants' reply memorandum of law.  (Dkt. No. 46 [Text Order dated May 31, 2016].)  Plaintiff declined the Court's invitation to respond to this issue, neglecting to file a sur-reply.  Accordingly, the Court finds that Defendants' arguments regarding this issue are unopposed and that they have met their modest burden demonstrating that they had a legitimate,

-38-

nonretaliatory reason for placing Plaintiff in the SHU for the reasons stated in their reply memorandum of law.  (Dkt. No. 43, at 10-11 [Defs.' Reply Mem. of Law].)  Even if the Court were to subject this legal argument to the more heightened scrutiny appropriate for a contested legal argument, it would find that legal argument to have merit, for the reasons stated by Defendants.

Accordingly, for all of the foregoing reasons, Plaintiff's first and second causes of action are dismissed for failure to exhaust his administrative remedies.  As discussed above in Part III.A.4. of this Decision and Order, these claims would ordinarily be dismissed without prejudice to give Plaintiff an opportunity to exhaust his administrative remedies.  However, because administrative remedies have become unavailable (due to Plaintiff's release from incarceration), he had ample opportunity to use them while he was incarcerated, and no special circumstances justified his failure to exhaust, these claims are dismissed with prejudice.  *See Prescott v. Annetts*, 09-CV-4435, 2010 WL 3020023, at *8 (S.D.N.Y. July 22, 2010) (dismissing plaintiff's claims with prejudice because he had ample opportunity to exhaust his administrative remedies while incarcerated, they are no longer available to him because he has been released, and no special circumstances justified his failure to exhaust); *accord*, *Fowler v. Fischer*, 13-CV-6262, 2014 WL 4058218, at *1 (S.D.N.Y. Aug. 14, 2014); *Finger v. Superintendent McFinnis*, 99-CV-9870, 2004 WL 1367506, at *5 (S.D.N.Y. June 16, 2004).  Plaintiff's fourth cause of action is likewise dismissed with prejudice for the additional reason that Defendants' had a legitimate, nonretaliatory reason for placing Plaintiff in the SHU.

### E.     Whether Kristin Salotti Should Be Joined as a Defendant

After carefully considering the matter, the Court answers this question in the negative for the reasons set forth below.

Generally, a motion such as this one is brought under Fed. R. Civ. P. 15(a).[30]  However,

courts also apply Fed. R. Civ. P. 16(b)(4) when a party has moved to join or add a party after the

expiration of a scheduling order deadline.  *See, e.g.*, *Gullo v. City of New York*, 540 F. App'x 45,

47 (2d Cir. 2013); *Charles v. City of New York*, 11-CV-2783, 2015 WL 756886, at *2 (S.D.N.Y.

Feb. 20, 2015); *Gallo v. Wonderly Co., Inc.*, 12-CV-1868, 2014 WL 36628, at *2-5 (N.D.N.Y.

Jan. 6, 2014) (Treece, M.J.); *Steuben Foods, Inc. v. Shibuya Hoppmann Corp.*, 10-CV-0781,

2012 WL 3204040, at *2-3 (W.D.N.Y. Aug. 3, 2012).[31]  "[A] finding of 'good cause' depends on

the diligence of the moving party." *Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d

Cir. 2000); *accord*, *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 244 (2d Cir. 2007).

---

[30]     Despite the fact that Plaintiff has requested leave to "join" a female nurse as a
defendant in place of male doctor Defendant John Doe 1, the Court finds that the request is
appropriately analyzed as a motion to amend under Fed. R. Civ. P. 15 rather than a motion to join
a defendant under Fed. R. Civ. P. 20(a)(2) due to the explanation for that request (e.g., that
Plaintiff had named "John Doe 1, Plaintiff's Treating Physician" based on his presumption that
he had been treated by a male doctor and that he had later learned that his only treatment provider
was a female nurse).  *Cf. Llody v. Yankey*, 12-CV-5913, 2013 WL 6086074, at *1-2 (W.D. Wash.
Nov. 19, 2013) ("After Defendants filed their motion for summary judgment, Plaintiff was
granted leave to amend his complaint to correctly name 'John Doe' as Nurse Practitioner P.
McClan . . . who failed to splint his finger or to refer him for x-rays or follow-up to a doctor,
even though his finger was twisted and bent when *she* examined his hand.") (emphasis added);
*Washington v. Reed*, 07-CV-4231, 2008 WL 2230704, at *3 (W.D. Mo. May 29, 2008)
("[P]laintiff filed a motion to amend his complaint to provide the name of the defendant nurse
[Annette R. Bruemmer] previously identified only as a John Doe. . . . Plaintiff will be granted
leave to substitute the name of Bruemmer for the John Doe defendant. . . .").

[31]     Similarly, this Court's Local Rules state the following:

> Deadlines that the Court institutes in any case management order
> shall be strictly enforced and shall not be modified by the Court,
> even upon stipulation of the parties, except upon a showing of
> good cause.

N.D.N.Y. L.R. 16.1(f).

Furthermore, "[g]ood cause should not be subject to either the subjective needs or caprice of the litigants but, rather, should be based upon an objective standard." *Gallo*, 2014 WL 36628, at *2. "The burden of demonstrating good cause rests with the movant. . . . The burden of demonstrating prejudice rests with the non-movant." *Scott v. Chipotle Mexican Grill, Inc.*, 300 F.R.D. 193, 198 (S.D.N.Y. 2014).

　　　As discussed above in Part I.C.2.b. of this Decision and Order, Defendants argue only that Fed. R. Civ. P. 16 is inapplicable to Plaintiff's cross-motion to join Ms. Salotti. Notwithstanding Defendants failure to identify the correct standard (or even apply the incorrect standard), the Court finds that Plaintiff has failed to demonstrate good cause to join or add Ms. Salotti as a defendant at this stage in the litigation.  More specifically, the Uniform Pretrial Scheduling Order required that any application to join or add parties to be made on or before September 5, 2014.  (Dkt. No. 14, at 1 [Uniform Pretrial Scheduling Order].)  On December 2, 2014, the parties attempted to extend this deadline by stipulating that Plaintiff would have until December 8, 2014, to join or add parties.  (Dkt. No. 33.)  However, Magistrate Judge Treece denied the parties' request to extend the deadline, noting that the initial deadline had already expired, resulting in Plaintiff having to show good cause before the deadline would be extended. (Dkt. No. 34 [Text Order dated December 4, 2014].)  Plaintiff attempts to make that showing now, arguing, in part, that "it was not until the middle of March, 2015, [that] plaintiff's counsel was able to irrefutably determine that Ms. Salotti was plaintiff's only treating provider." (Dkt. No. 42, at 7 [Pl.'s Opp'n Mem. of Law].)  Conspicuously absent from Plaintiff's papers, however, is an explanation as to why he waited until August 14, 2015, to move to join Ms. Salotti when he was able to "irrefutably determine" her identity in March 2015.  Accordingly,

-41-

Plaintiff has failed to demonstrate the due diligence necessary to establish good cause by failing to take any action during the five months that elapsed between mid-March and mid-August 2015. *See Gullo*, 540 F. App'x at 47 ("The district court acted well within its discretion in concluding that plaintiffs' three-month failure to move for amendment after learning the officers' names failed to demonstrate the diligence necessary to satisfy Rule 16."). Moreover, such a delay, especially in a relatively old case such as a this one, prejudice Defendants by affecting witnesses' memories, the ability to locate witnesses (who might retire from, or be transferred within, DOCCS), and the preservation of evidence. *See Georgiadis v. First Boston Corp.*, 167 F.R.D. 24, 25 (S.D.N.Y. 1996) ("The passage of time always threatens difficulty as memories fade. Given the age of this case, that problem probably is severe already. The additional delay that plaintiff has caused here [which was four months in length] can only make matters worse.").

In any event, even if Plaintiff had shown good cause for the five-month delay, he has failed to meet the underlying standard for a motion to amend under Fed. R. Civ. P. 15(a). *See Foman v. Davis*, 371 U.S. 178, 1782 (1962) (explaining that permissible grounds upon which to base the denial of a motion for leave to file an amended complaint include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance the amendment, futility of amendment, etc."). Finally, even if the underlying standard were one under Fed. R. Civ. P. 20(a)(2), Plaintiff has failed to meet that standard, which is similar to the standard under Fed. R. Civ. P. 15(a). *See Midlantic Commercial. Co. v. Prime Sportswear Corp.*, 95-CV-10192, 1996 WL 361539, at *5 (S.D.N.Y. June 27, 1996) ("In deciding whether permissive joined is warranted, a court should determine whether the requirements of Rule 20 are

-42-

satisfied, and then weigh any considerations relevant to efficient adjudication such as the potential for delay and unfair prejudice.").

For all of the foregoing reasons, Plaintiff's cross-motion is denied.  Moreover, because Plaintiff has made clear that Ms. Salotti is actually the John Doe 1 Defendant against whom he intended to assert an Eighth Amendment claim (*see*, *supra*, Part I.C.2.a of this Decision and Order), Plaintiff's third cause of action is dismissed against Defendant John Doe 1.  The Court notes that it would reach this conclusion even if it were to analyze this issue under the standard governing dismissals for failure to prosecute under Fed. R. Civ. P. 41(b).  More specifically, the Court finds that (1) the duration of the Plaintiff's failure to name Defendant John Doe 1 is some twenty-one months (having begun on the deadline for motions to amend on September 5, 2014), (2) Plaintiff received adequate notice that a delay would result in the dismissal of this claim (given that he is represented by counsel who is familiar with both the Federal Rules of Civil Procedure and Local Rules of Practice for this Court), (3) Defendants are likely to be prejudiced by a further delay (for the reasons discussed above in *Geordiadis*, 167 F.R.D. at 25), (4) Plaintiff's right to due process and a fair chance to be heard on this claim is outweighed by the need to alleviate congestion on the Court's docket, and (5) lesser sanctions would not be effective under the circumstances.  *See Hevner v. Vill. E. Towers, Inc.*, No. 07-5608, 2008 WL 4280070, at *1-2 (2d Cir. Sept. 18, 2008).

**ACCORDINGLY,** it is

**ORDERED** that Defendants' motion for summary judgment (Dkt. No. 37) is **<u>GRANTED</u>**; and it is further

-43-

**ORDERED** that the following portions of Plaintiff's Complaint (Dkt. No. 1) are

**<u>DISMISSED</u>**:

  (1) Plaintiff's First, Second, and Fourth Causes of Action against DOCCS, which

are **<u>DISMISSED</u> with prejudice**; and

  (2) Plaintiff's Third Cause of Action against Defendant Sheahan and "John Doe

1," which is **<u>DISMISSED</u> with prejudice**; and it is further

**ORDERED** that Plaintiff's cross-motion to join Kristin Salotti as a defendant (Dkt. No.

42) is **<u>DENIED</u>**; and it is further

**ORDERED** that the sole remaining claim in this action–i.e., Plaintiff's Third Cause of

Action against Defendant "John Doe 2"–shall be **<u>DISMISSED</u> with prejudice** for failure to

prosecute under Fed. R. Civ. P. 41(b) **UNLESS**, within **THIRTY (30) DAYS** of the date of this

Decision and Order, Plaintiff files a motion for leave to file an Amended Complaint identifying

that Defendant.

Dated: July 5, 2016
   Syracuse, New York

                 Hon. Glenn T. Suddaby
                 Chief U.S. District Judge